**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONALD DICKINSON, ) | |
| ) | CASE NO. 4:05cv01876 |
| Petitioner, ) | |
| ) | JUDGE BOYKO |
| v. ) | |
| ) | MAGISTRATE JUDGE VECCHIARELLI |
| SAMUEL TAMBI, Warden, ) | |
| ) | |
| Respondent. ) | **REPORT & RECOMMENDATION** |

Petitioner, Donald Dickinson ("Dickinson"), challenges the constitutionality of his conviction and sentence in the case of *State v. Dickinson*, Case No. 02-CR-20. Dickinson, *pro se*, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on July 28, 2005 with the United States District Court for the Northern District of Ohio. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, the Magistrate Judge recommends the habeas petition (Doc. No. 1) be DENIED.

**I. Procedural History**

**A. Conviction and Sentence**

On January 25, 2002, in the Columbiana County Court of Common Pleas, Dickinson pled guilty to one count of sexual battery, a third-degree felony. (*See* Transcript of Proceedings, Doc. No. 9, Ex. 17 at 16-17.) Dickinson's entered the guilty plea pursuant to a written plea agreement. (*Id*. at 3-4.) On April 2, 2002, the court sentenced Dickinson to the maximum term of five-years imprisonment, ordered him to pay court costs, and designated him a sexually oriented offender.

**B. Direct Appeal**

Although Dickinson failed to file a timely notice of appeal within thirty days of being sentenced,[1] he filed a motion for leave to file a delayed appeal, *pro se*, in the Ohio Court of Appeals for the Seventh District on September 19, 2003, over sixteen months after the timely filing deadline. (*See* Doc. No. 9, Exs. 8 and 9.) The Court of Appeals granted Dickinson leave to file a delayed appeal and appointed the Ohio Public Defender to represent him. (*See* Court of Appeals Journal Entry, Doc. No. 9, Ex. 9.) On November 26, 2004, the Court of Appeals affirmed the judgment of the trial court. (Court of Appeals Opinion, Doc. No. 9, Ex. 12.)

Dickinson timely filed a notice of appeal in the Supreme Court of Ohio on January 10, 2005. (Doc. No. 9, Ex. 13.) On April 13, 2005, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. No. 9, Ex. 16.)

**C. Federal Habeas Petition**

On July 28, 2005, Dickinson, *pro se*, filed a Petition for Writ of Habeas Corpus, asserting two grounds for relief:

> GROUND ONE: Petitioner was denied his constitutional right to the effective assistance of counsel at sentencing when defense counsel's deficient performance breached Petitioner's plea agreement.
>
> GROUND TWO: The trial court erred when it imposed costs on Petitioner.

---

[1]Dickinson's sentencing hearing was held on March 29, 2002, but the proceedings were not journalized until April 2, 2002. As the Ohio Court of Appeals treats the latter date as the relevant date for purposes of calculating appeal deadlines, this Court does so as well.

On March 1, 2006, Dickinson filed a motion for leave to amend the Petition, seeking to dismiss Ground Two as he conceded that it was both procedurally defaulted and grounded solely in state law. (Doc. No. 11.) On October 19, 2006, the Court granted Dickinson's request and dismissed Ground Two.[2] (Doc. No. 22.) Therefore, Ground One presents Dickinson's sole ground for relief.

## II. Statute of Limitations

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Dickinson filed his habeas corpus petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). In AEDPA, Congress enacted a period of limitations for the filing of habeas petitions. The statute provides, in relevant part, as follows:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2]Dickinson also sought to add a new claim alleging ineffective assistance of appellate counsel. However, the Court denied that portion of the motion because the proposed claim was unexhausted. The Court granted Dickinson fifteen days from the date of its order to dismiss the Petition without prejudice and return to state court to exhaust the ineffective assistance claim, if he wished to do so. Dickinson chose to proceed with the Petition on Ground One only.

3

>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

The statute of limitations is not jurisdictional; it is an affirmative defense. *Day v. McDonough*, 126 S.Ct. 1675, 1681 (2006); *Scott v. Collins*, 286 F.3d 923, 927 (6th Cir. 2002). As such, the party asserting the defense has the burden of demonstrating that the statute has run. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). Moreover, the limitations period is subject to equitable tolling.[3] *Griffin v. Rogers*, 399 F.3d 626, 631 (6th Cir. 2005).

In the instant action, Respondent asserts that Dickinson's petition is time-barred because it was not filed within the one-year limitations period. Using § 2244(d)(1)(A) to determine the date on which the clock began running, Respondent asserts that as Dickinson was sentenced on April 2, 2002, the clock began running thirty days later, on May 2, 2002[4] and expired on May 2, 2003. While acknowledging that a motion for delayed appeal may toll the running of the

---

[3] Courts in the Sixth Circuit should consider five factors in determining whether to apply equitable tolling: 1) the petitioner's lack of notice of the filing requirement; 2) the petitioner's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to respondent; and 5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 2002). As these factors are neither comprehensive nor relevant in every case, "courts must consider equitable tolling on a case by case basis." *Griffin v. Rogers*, 399 F.3d 626, 635 (6th Cir. 2005) (internal citations omitted).

[4] Ohio law provides that a party may appeal as of right by filing a notice of appeal "within thirty days of the later of entry of the judgment or order appealed . . . ." Ohio App. R. 4.

4

limitations period, Respondent asserts that Dickinson's motion for delayed appeal did not toll the limitations period in this case. Respondent argues that the time is not tolled because Dickinson filed his motion for delayed appeal on September 19, 2003, more than four months after the limitations period had expired.

Dickinson appears to make three arguments in response to the asserted statute of limitations defense. First, Dickinson argues that the Court should apply § 2244(d)(1)(B) to determine the date on which the clock began running because there was an impediment to the filing of his appeal. He asserts that the trial court created an impediment to filing when it failed to inform him of the right to appeal. Therefore, the limitations period did not begin to run until the impediment was removed. Dickinson asserts the impediment was removed when he discovered, through other inmates, that he could appeal his sentence. According to Dickinson, the date of this discovery was September 19, 2003.[5]

Alternatively, Dickinson argues that the Court should use § 2244(d)(1)(D) to determine the date on which the clock began running because he could not have timely discovered the factual predicate of his claim through the exercise of due diligence. Dickinson asserts that both

---

[5]Dickinson's repeated assertion that September 19, 2003 was the date that he actually discovered that he had a right to appeal is suspect. First, his motion for leave to file a delayed appeal is signed and dated Septmeber13, 2003. Therefore, Dickinson had to have been aware of his right to appeal at least as of that date. Second, documents attached to Dickinson's Traverse suggest that Dickinson may have been aware that he had the right to appeal prior to September of 2003. See Attachments to Doc. No. 13. (The attachments relate to three grievances Dickinson filed in the Supreme Court of Ohio against three different attorneys in three different matters. Dickinson's purpose for attaching these documents is not clear, as he does not refer to them in his Traverse. Nonetheless, among them is a letter to the Disciplinary Counsel dated December 17, 2002, in which Dickinson indicates that, on July 17, 2002, he hired an attorney to "represent [him] in court with . . . a reduction of sentence action." )

the trial court and his own attorney failed to inform him that he had a right to appeal, and further asserts that September 19, 2003 is the date on which he actually discovered and could have discovered, through due diligence, the factual predicate of his claim.

Finally, Dickinson argues that, assuming the statutory clock began running at the expiration of the time for seeking direct review on May 2, 2002, as Respondent alleges it did under § 2244(d)(1)(A), the Court should apply the doctrine of equitable tolling. He argues that the Court should toll the period from April 2, 2002, the date Dickinson was sentenced, until the September 19, 2003, the date he filed the motion for leave to file a delayed appeal. In support of his equitable tolling argument, Dickinson asserts that neither the trial court nor his attorney informed him of his appeal rights and that he was not aware that he had a right to appeal until the time he actually filed for leave to file a delayed appeal. He further claims that his access to legal materials was restricted until thirteen months into his incarceration.

To properly consider each of Dickinson's arguments and decide the issue of timeliness, the Court would need to conduct an evidentiary hearing to determine a number of factual issues, such as whether Dickinson was aware of his right to appeal prior to September of 2003 and, if so, when he became aware of the right to appeal or, if not, when he could have become aware of the right through the exercise of due diligence. However, because the Court finds that Dickinson's sole claim for relief fails on the merits, as discussed below, the Court assumes, without deciding, that Dickinson was not informed of, nor aware of the right to appeal until the time he first appealed or shortly before that time and that his petition is, therefore, timely.[6] In

---

[6]The transcripts of Dickinson's plea hearing and sentencing reveal that the trial court never informed Dickinson of his appellate rights. (Transcript of Proceedings, Doc. No. 9, Ex. 17; Transcript of Sentencing, Attachment to Petition, Doc. No. 1.) Moreover, at the

6

doing so, the Court defers to the Ohio Court of Appeals decision excusing Dickinson's untimely filing and granting Dickinson a delayed appeal.[7]

### III. Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Dickinson filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

time of or before his guilty plea, Dickinson was apparently provided with a written document, signed by the trial judge, entitled Judicial Advice to Defendant. The only advice contained in that document that has any bearing on the issue of appellate rights is the following sentence in paragraph 19: "*If* you had a trial and were convicted, *you would have* the right to appeal and have an attorney appointed to prosecute such appeal, if you are indigent." (Doc. No. 9, Ex. 3A at 4.) (Emphasis added.) While the document does not explicitly state that a defendant waives all appellate rights by pleading guilty, the inclusion of this single sentence regarding appellate rights could very easily mislead a reasonable defendant to conclude that because he or she is pleading guilty, and not having a trial, he or she does not have the right to appeal or have appointed counsel if indigent.

[7]In his brief in support of his motion for leave to file a delayed appeal, Dickinson asserted the same reason for cause to excuse the delay in filing that appeal as he asserts in response to the asserted statute of limitations defense in this proceeding. (Doc. No. 9, Ex. 8.)

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of the United States Supreme Court, as opposed to dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts

8

defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.")) The "unreasonable" requirement is a high bar. *Ruimveld*, 404 F.3d at 1010.

## IV. Analysis

Dickinson asserts one ground for relief: "Petitioner was denied his constitutional right to the effective assistance of counsel at sentencing when defense counsel's deficient performance breached Petitioner's plea agreement." Under clearly established federal law, to succeed on an ineffective assistance of counsel claim, Dickinson must prove that his trial counsel's performance was deficient and that, as a result of the deficiency, the defense was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy *Strickland's* two-prong test, Dickinson must demonstrate the following: 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687-88, 694.

### A. First Prong: Counsel's Performance

Prior to pleading guilty, Dickinson entered into a one-page written plea agreement with the state in which the parties agreed that 1) Dickinson would plead guilty to sexual battery; 2) at sentencing, the state would recommend a five year definite prison term, oppose probation, and if probation were granted, recommend that the first six months be served at the Eastern Ohio Correctional Center; and 3) Dickinson would request probation or community control sanctions. (Felony Plea Agreement, Doc. No. 1, Ex. A.) At Dickinson's sentencing, the prosecutor

9

recommended the maximum prison term of five years, but Dickinson's attorney failed to request probation or a lesser sentence than the maximum term of five years.

After the prosecutor recommended the maximum sentence, the court asked defense counsel whether the prosecutor properly stated the contents of the plea agreement, to which counsel replied, "Yes, he has, your Honor." (Sentencing Tr. at 4, attached to Doc. No. 1.) The prosecutor did not mention the provision of the plea agreement indicating that the defense would request probation. Next, the court asked defense counsel whether he wished to present any evidence on behalf of his client. Counsel replied, "I would just have my client speak to the court." (*Id*. at 5.) Finally, after hearing emotional testimony from both parents of the victim, the court inquired of counsel, "Attorney Sams, is there anything that you would like to say on your client's behalf?" Counsel replied, "No, your honor." *(Id*. at 8.) At that point, the court allowed Dickinson to speak on his own behalf before sentencing him to the maximum term of five years imprisonment.[8] *(Id*.)

Under the first prong of the *Strickland* test, the Ohio Court of Appeals was required to determine whether counsel's performance at the sentencing hearing fell below an objective standard of reasonableness when counsel failed to request probation in accordance with the terms of the plea agreement. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A defendant's disagreement with tactics and/or strategies will not support a claim of ineffective assistance of counsel; and a petitioner in habeas

---

[8] Dickinson made this brief statement to the court: "If I could give my life for what I've done wrong, I would do that. So, whatever punishment you deem necessary, why, its up to you." *Id*.

corpus must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Id.* at 689. *See also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The presumption that counsel made all significant decisions in the exercise of reasonable professional judgment is ordinarily difficult to overcome.

The Ohio Court of Appeals found that defense counsel breached the plea agreement by remaining silent when the trial court asked if he wanted to say anything on his client's behalf. Although it opined that "counsel does appear to have erred in failing to request probation or community control sanctions," the Ohio Court of Appeals stopped short of finding that counsel's performance was deficient. (Court of Appeals Opinion at 4, Doc. No. 9, Ex. 12.) It did so because it found that, assuming counsel's performance was deficient, Dickinson was not prejudiced. Thus, this Court must examine the state court's analysis of the prejudice prong.

**B. Second Prong: Prejudice**

Under *Stickland*'s second prong, Dickinson must prove that his defense was prejudiced as a result of counsel's deficient performance. In other words, Dickinson must demonstate that had counsel requested probation, Dickinson's sentence would have been different. Even in the most favorable circumstances, the prejudice prong presents an onerous burden for a petitioner.

The circumstances in this case could hardly be less favorable to Dickinson in satisfying his burden of demonstrating prejudice. The Court of Appeals concluded that no prejudice resulted from counsel's deficient performance. It reached this conclusion through the following reasoning:

> First, the trial court assumed that counsel would make a request for probation and community control sanctions and the court denied that request both at the sentencing hearing and in the sentencing judgment entry. Second, the trial court found that Appellant had committed the worst form of the offense, that Appellant

11

>had committed multiple sexual offenses, and that Appellant had a high risk of reoffending. The court found that anything less than the maximum sentence would demean the seriousness of the offense. The court also stated that , "[i]f the law gave me more options, you would have to suffer the consequence because for what you have done even the maximum term here, in my judgment, is insufficient." Based on the specific findings and opinions of the court, there is no indication that the outcome of the sentencing hearing would have been any different if counsel had specifically requested probation or community control sanctions.

(Court of Appeals Opinion at 5, Doc. No. 9, Ex. 12.) The Court of Appeals applied the correct legal standard. Furthermore, its conclusion was based on a reasonable application of that standard to the facts of this case.

As the court stated in its opinion, the trial court "assumed" that counsel would request probation and expressly denied that request. In examining the trial court's statements at sentencing and in the judgment entry, it appears that the court actually treated the defense as having made a request for probation and community control sanctions. The trial court's last statement at the sentencing hearing was, "Requests for community control sanctions are, of course, denied." (Sentencing Tr. at 14, Attachment to Doc. No. 1.) The judgment entry states, "The Court further finds that the Defendant is not amenable for probation in this matter and, therefore, denies his request for the same . . . Defendant's request for probation is denied." (Judgment Entry at 1-2, Doc. No. 9, Ex. 6.) Based on these statements alone, the Court of Appeals could have reasonably concluded that Dickinson failed to demonstrate that his sentence would have been different, had counsel formally requested probation at sentencing.

The other reasons cited by the Court of Appeals add even more support to its conclusion that no prejudice resulted from the deficiency. The trial court found that Dickinson committed the worst form of the offense because of his relationship to the victim, his grandson, and that he

12

had a high risk for re-offending because of both his relationship to the victim and his admission that he committed multiple acts. (Sentencing Tr. at 10-11, attachment to Doc. No. 1.) It found that anything less than the maximum sentence would demean the seriousness of the offense. (*Id*. at 11.) Perhaps most significantly, the trial court revealed that if it could, it would impose an even greater punishment on Dickinson. (*Id*. at 13.) In light of the trial court's findings and its view that the statutory maximum sentence was an inadequate consequence for Dickinson's criminal conduct, it was objectively reasonable for the Ohio Court of Appeals to conclude that Dickinson was not prejudiced by counsel's failure to request probation at the sentencing hearing.

Accordingly, Dickinson has not established that the state court decision overruling his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends the Petition be DENIED.


    /s/ *Nancy A. Vecchiarelli*
    Nancy A. Vecchiarelli
    United States Magistrate Judge

Date: March 15, 2007


**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**